UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
JERMAINE BARNES,                            :
                                            :
                          Petitioner,       :
                                            :        MEMORANDUM
            - against -                     :        AND ORDER
                                            :
SUPERINTENDENT, Attica Correctional         :        06 CV 3267 (JG)
Facility,                                   :
                                            :
                          Respondent.       :
----------------------------------------------------------------- X

A P P E A R A N C E S :

        JERMAINE BARNES
                Inmate Number 00-A-1274
                Attica Correctional Facility
                P.O. Box 149
                Attica, NY 14011-0149
                Petitioner, *pro se*

        RICHARD A. BROWN
                District Attorney
                Queens County
                125-01 Queens Boulevard
                Kew Gardens, NY 11415
        By:     Karen Wigle Weiss
                Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Jermaine Barnes, incarcerated pursuant to a judgment of the New York State

Supreme Court, Queens County, petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

Oral argument was held (at which Barnes appeared by telephone) on January 19, 2007.  For the

reasons set forth below, the petition is denied as untimely and without merit.

BACKGROUND

        On December 16, 1999, Barnes was convicted by a jury of rape in the first degree,

N.Y. Penal Law § 130.35, and rape in the second degree, N.Y. Penal Law § 130.30.[1]  On

February 10, 2000, Barnes was sentenced to a determinate term of incarceration of 20 years for

the primary conviction, to be served concurrently with an indeterminate term of three and one-

half to seven years for the second-degree rape count.

A.      *The Offense Conduct*

The evidence at trial established that at 8:00 p.m. on February 26, 1998, Barnes

grabbed twelve-year-old Errina Smith while she was walking near her house.  She resisted by

kicking and screaming.  Barnes demanded that she be quiet.  Barnes dragged her into his nearby

house, ordered her to be quiet again, and threatened to hit her with a tricycle.

Taking her to a bedroom, Barnes threw her on the bed and commanded her to take

off her clothes.  Smith refused.  Barnes repeated the command, and Smith removed her sweater

and overalls.  Smith testified that she asked him not to hurt her.  Barnes removed Smith's

underwear.  He removed his own clothes, climbed on top of Smith while she wept, and

repeatedly forced his penis into her vagina.  He also kissed her breasts, buttocks, and vagina.

Barnes then got off the bed and wiped his penis with a towel, which he dropped

on the floor.  He then asked Smith for her name, wrote something in a notebook, and said that if

Smith signed her name underneath the writing he would let her go.  Smith complied without

reading the writing, which turned out to be a "contract" stating that Smith had had consensual

sex with Barnes.  Smith then left, leaving behind a hair clip and two one-dollar bills.

---

[1]      When asked to "[i]dentify all crimes of which you were convicted and sentenced in this case" on his form petition, Barnes lists only "Rape I."  *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ln. 5.  Barnes checks the box next to "No" when asked "were you convicted on more than one count or of more than one crime?"  However, Barnes was both convicted and sentenced for the second-degree rape count.  The prosecution dropped a third count Barnes was convicted of, for second-degree unlawful imprisonment, prior to sentencing.

Smith returned home crying and moaning in pain, and related what had happened to her stepfather. Smith then used the bathroom and Smith's mother called the police. When the police arrived at the home, Smith was still crying and moaning. The officer learned from a radio transmission that a suspect had been apprehended nearby. He drove to the location and approached Barnes, who said, "I am the one you are looking for. I am the one that had sex with the young lady." The police brought Barnes to the rear of the ambulance in which Smith had been placed, and she identified Barnes as her assailant.

A fourth-year resident at St. John's Hospital performed a "rape kit" on Smith. He determined that her hymen appeared intact. However, Dr. Philip Hyden, an expert in child abuse, testifed that the hymen of post-pubertal children is elastic. Hyden concluded that a review of Smith's medical records reflected evidence of trauma to her vagina, indicating forced sexual intercourse.

Barnes gave written and videotaped statements to the police, in which he said he had had consensual sex with Smith. He also consented to a search of his house, where Smith's hair clip, the two one-dollar bills, the signed paper, the towel, and Barnes's bedsheet were seized. The towel contained a stain of blood from Smith next to a stain of semen from Barnes.

B.      *The Direct Appeal*

Barnes appealed his conviction in June 2001, arguing the prosecutor deprived him of his right to a fair trial by (a) making inflammatory remarks about the victim's lack of sexual experience and humiliation, (b) arguing that defense counsel "fought like heck" to keep from the jury a photo of Smith at the time of the offense conduct, and (c) vouching for Smith's credibility by arguing facts not in evidence. The Appellate Division affirmed. *People v. Barnes*, 734

N.Y.S.2d 480, 480 (2d Dep't 2001). The court held that the challenges to the remarks in the

closing statement were "largely unpreserved" for review and not improper. *Id.* The court also

held the opening statement remarks could not support reversal "in light of the overwhelming

evidence of the defendant's guilt." *Id.*

Leave to appeal to the New York Court of Appeals was denied on March 6, 2002.

*People v. Barnes*, 97 N.Y.2d 251 (2002). A motion for reconsideration was denied on June 14,

2002. *People v. Barnes*, 98 N.Y.2d 672 (2002).

DISCUSSION

Barnes states that he placed the petition at issue into the prison mailing system on

June 26, 2006. He does not press the arguments he made on direct appeal. Rather, he argues (1)

his DNA was not found on Smith, (2) the jury in his case was improperly sent home after the

first day of deliberations though it had not reached a verdict, (3) his trial counsel was ineffective

for failing to move for a mistrial on the grounds that the jury was improperly sent home, and (4)

the prosecutor who tried his case had a conflict of interest because the prosecutor also conducted

his pre-arrest questioning. He contends that he did not raise issues (1) and (4) on direct appeal

because of the ineffective assistance of counsel. He did not raise issue (2) and (3) on direct

appeal because, he claims, the trial record was altered by the court reporter.

A.      *Untimeliness*

Respondent argues that the petition must be dismissed because it was untimely

filed. I agree. The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-123,

110 Stat. 1214 ("AEDPA"), established a one-year period of limitation for petitions seeking

habeas relief. *See* 28 U.S.C. § 2244(d)(1). In this case, the one-year period started to run at the

4

time the conviction became final. *See id.* § 2244(d)(1)(A). Barnes's conviction became final

"upon expiration of the ninety-day period to petition for a writ of *certiorari* to the United States

Supreme Court." *Pratt v. Greiner*, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002). Applying that

calculation, Barnes had 90 days from the day leave to appeal to the New York Court of Appeals

was denied on March 6, 2002, which means his limitations period commenced on June 5, 2002,

and expired one year later. Barnes delivered his petition to the prison authorities on June 16,

2006, which is the effective date of his filing. *See Fernandez v. Artuz*, 402 F.3d 111, 116 (2d

Cir. 2005), *cert. denied*, 126 S.Ct. 79 (2005). Thus, he filed more than three years after the one-

year period expired.

Barnes cannot claim the benefit of tolling. As he has not filed any collateral

attacks on his conviction, he obtains no benefit from the tolling provision of 28 U.S.C. §

2244(d)(2). Nor should the one-year limit be tolled because of equitable principles. Barnes

provides an affirmation that his petition should not be time-barred because "throughout the

period I'm seeking to toll . . . resulting from reconsideration denial [*i.e.*, by the Court of

Appeals], I suffered from PTSD (Post Traumatic Stress Disorder) and other significant

psychiatric problems, which until only recently rendered me disabled and unable to file the writ

of habeas corpus on time." Barnes Aff. 1-2, Aug. 29, 2006. Barnes includes a document from

the Auburn Correctional Facility listing Barnes as a patient with a "history of PTSD, or other

significant psychiatric problems." *Id.* at 3. Depending on the recency and severity of such

mental conditions, they might well amount to an extraordinary circumstance that, in an

appropriate case, would warrant equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d

Cir. 2000), *cert. denied*, 531 U.S. 840 (2000) ("In order to equitably toll the one-year period of

limitations, Smith must show that extraordinary circumstances prevented him from filing his petition on time."). The affirmation and the prison document provide some evidence that Barnes has suffered from PTSD or other psychiatric disorders. But Barnes must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing . . . ." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001), *cert. denied*, 536 U.S. 925 (2002) (internal quotation marks omitted). He makes no such demonstration. The instant petition was filed more than three years after Barnes's one-year period for filing such a petition expired. The bare assertion that mental disorders "rendered" him "unable to file" at any point during that three-year period is, without more, an insufficient demonstration of a causal relationship. *Cf. Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (holding, in the Rehabilitation Act equitable tolling context, that plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling").

Barnes's petition is therefore time-barred. Moreover, as discussed below, the claims advanced in the petition are without merit.

B.    *The Claims*

Barnes has exhausted none of the claims he raises here. His first claim -- that no DNA evidence was discovered on Smith -- can no longer be exhausted, because New York law requires courts to deny a collateral attack on a conviction when the claim could have been raised based on the record on direct review. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Accordingly, Barnes has procedurally defaulted that claim. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.

2001) (an unexhausted claim that can no longer be exhausted triggers procedural default analysis). As for the remaining three claims, Barnes may have a chance of review on collateral attack, as they involve matters requiring analysis of events outside the record. *See* N.Y. Crim. Proc. Law § 440.10(3). Barnes's claim that the court reporter falsified the record in his case to hide the fact that the jury was not properly sequestered, while perhaps unlikely to prevail given the heightened presumption of regularity attaching to judicial proceedings, is nonetheless a question that implicates facts outside the record. His claim that trial counsel failed to move for a mistrial based on the alleged violation of the sequestration rule, accordingly, is a matter outside the record too. The claim that the prosecutor had a conflict of interest because he interviewed Barnes before his arrest is also a matter outside the record.

Rather than dismiss the unexhausted claims and stay consideration of the procedural default of the DNA evidence claim, *see Zarvela v. Artuz*, 254 F.3d 374, 376 (2d Cir. 2001), *cert. denied*, 534 U.S. 1015 (2001) (holding that "a district judge confronting a mixed petition has discretion either to dismiss the petition, or to dismiss only the unexhausted claims and stay the balance of the petition"), however, I invoke the authority conferred by AEDPA and deny the claims as meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The DNA evidence claim is frivolous. Because state law does not require DNA evidence to be discovered on the victim, I construe this claim as a challenge to the sufficiency of the evidence. No criminal defendant may be convicted of a criminal offense except by proof of each element of the offense beyond a reasonable doubt. *See In Re Winship*, 397 U.S. 358, 368

(1970). The question such a challenge raises "is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979). A rational trier of fact could well conclude from the evidence presented at trial that

Barnes had "sexual intercourse" with Smith "[b]y forcible compulsion." N.Y. Penal Law §

130.35(1). Indeed, the testimony that Barnes forced himself on Smith; the victim's blood and

Barnes's semen found on the towel in his home; the "contract;" and the medical testimony that

the intercourse was forced are just several items among the overwhelming evidence of guilt.

Accordingly, the claim is denied.

Barnes's claim that the jury was improperly sent home when it was supposed to

be sequestered pursuant to N.Y. Crim. Proc. Law § 310.10 is also without merit. The claim

raises no federal issue for review. There is no federal requirement that courts sequester juries,

and indeed it almost never happens. In any event, the decision whether to do so is left to the

discretion of the trial court. *See United States v. Eisen*, 974 F.2d 246, 267 (2d Cir. 1992), *cert.*

*denied*, 507 U.S. 998 (1993), *and cert. denied*, 507 U.S. 1029 (1993). In the federal context,

"[t]he decision to sequester the jury to avoid exposure to publicity is committed to the discretion

of the court, and failure to sequester the jury can rarely be grounds for reversal." *United States*

*v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989), *cert. denied*, 491 U.S. 907 (1989), *and cert. denied*,

493 U.S. 811 (1989). Accordingly, even if Barnes is correct that the court reporter (for some

reason) falsified the record to hide the fact that the jury was sent home overnight, such an

occurrence would not support the issuance of a writ.

Barnes's claim that trial counsel was constitutionally ineffective in failing to

8

move for a mistrial on the grounds that the jury was improperly sent home is likewise without merit.  Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Barnes must establish that trial counsel's conduct fell below an objective standard of reasonableness, and that the resulting performance prejudiced the outcome of the trial.  Barnes does not defeat the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *United States v. Jones*, 918 F.2d 9, 11 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689), because even supposing the jury was improperly sent home rather than sequestered, counsel might well have concluded that Barnes was better off as a consequence.  It is reasonable for counsel to believe that a sequestered jury is not a happy jury.  Thus, when the trial judge decides to send the jurors home for the evening, it is not unreasonable for defense not to insist that they be lodged in a hotel instead.  Barnes makes no argument suggesting otherwise.

Barnes's final claim fares no better.  Even if the prosecutor was somehow biased by participating in the pre-arrest questioning of Barnes -- a claim I strongly doubt -- in light of the overwhelming evidence of his guilt, Barnes cannot demonstrate that such bias prejudiced his trial.  *See United States v. Terry*, 17 F.3d 575, 579 (2d Cir. 1994), *cert. denied*, 513 U.S. 946 (1994) ("[A] defendant who claims that a prosecutor bore a personal bias against him is required to show that he was prejudiced by the prosecutor's involvement.").  The claim is denied.

CONCLUSION

For the foregoing reasons, the petition is denied.  No certificate of appealability

shall issue.

So ordered.


John Gleeson, U.S.D.J.

Dated:  Brooklyn, New York
        January 23, 2007